Good morning, your honors. My name is Melissa Briggs, and I represent the United States in this appeal. I will try to reserve a few minutes for rebuttal. Good luck. So this appeal has its genesis in the same asset forfeiture case as the previous appeal, and I know from your questions that you're all very familiar with the record. The issue in this appeal is whether the Anti-Assignment Act applies to representation agreements executed by the Kim claimants assigning their attorney's fees, which were awarded to them pursuant to CAFRA, to their attorney. Let's assume that the Anti-Assignment Act does apply. Does it invalidate an attorney's charging lien against the proceeds? No. It does not, because the government in this case, you're familiar with the proceeding as against the assets themselves. The government took the position that Mr. Poning's same agreements gave him priority in the seized assets. What about priority as against the awarded fee? In other words, can he now make a claim to get a fee under the attorney's fees charging lien statute? Or is that only a claim against the property? Mr. Poning can take any, he can enforce these contracts in any way against anyone except the United States of America. Okay, but aren't there proceeds in this case in addition to the property? In this case, there are. Wasn't there an attorney's fee award? The proceeds were all settled out. I understand, but isn't there an attorney's fee award? Yes, there's an attorney's fee award, the majority of which was deposited with the court. Why doesn't counsel have a charging lien against that attorney's fee award? He does have a lien against it, but because of the Anti-Assignment Act, the agreement is completely invalid. I'm sorry, you and I are running around the same question. So I take it your position is because of the Anti-Assignment Act, the agreement is invalid and any charging lien that might result from that agreement is also invalid. Is that your position? Essentially, Your Honor. As we say in our brief, we do not dispute that his attorney's lien has priority over the government's tax lien, except for the fact of the Anti-Assignment Act. You're not really answering this question because the bottom line is, he's saying that the attorney fee, he would have a charging lien for an attorney fee even because he did the work, because he did the work pursuant to the contract. He's not suggesting that the proceeds would not go to the Kims. He's just saying, would he have a lien on those proceeds after they went to the Kims? Now, it can't go directly to him, so the statute is out, but they would go to the Kims. So these fees that go to the Kims, would he have a charging lien against them? Because what we've got here is, we've got fee awards, which are going to go someplace. You're saying they can't go directly, right? Because of the statute. I'll start that. Let's step back. So we'll step back. So under this court's decision, $186,000 in U.S. currency, under CAFRA, the fee awards are awarded to the client. We all agree. We all agree. We all agree, and we agree that they can't be, let's say that we all agree for purposes of this that they can't be assigned. My question is a different one. The efforts of counsel produced a fee award of $62,000, I forget what it was, some number, $100,000 say. The efforts of counsel produced that race, that pot of money, which the government was obligated to pay over to the Kims. Other people may have had claims against it, but that wasn't the government's problem. Why doesn't counsel have a claim against that fee amount? Because it was his efforts that produced it. He does have a claim against it, and he can enforce that, except for the problem that the obstacle that's insurmountable in the government's position is the anti-assignment. Well, but that's what we're asking about. So maybe we're not communicating, or maybe I'm not asking the right question. Let's say I agree with you that the Kims can't enter into an agreement with counsel that says, you get whatever we would have gotten. The government, you can't enforce that against the government, so the counsel can't come to the government and say, I have this piece of paper. So the government says, I'm not honoring that piece of paper, I'm paying out this fee award to the Kims. I'm paying it into court, because I understand lots of people have claims against it. Why isn't counsel one of those people, because he has a lien against it. They are one of those, he is, so the only parties I'm aware of that have a claim against that pot would be the government. And, well, but, okay, the government has a claim against that pot because it has other claims against the Kims. Because it has the tax lien. Right. Now, he says, but I have an attorney's fees charging lien against that pot of money, and it's not because it was assigned to me. It was because I entered, because I did the work that led to this pot of money. Why doesn't he have a claim against it? We say that he, we don't disagree that he has. Now, just a minute. Give me a case or a statute which would suggest he can't have his lien. I don't want him to get the proceeds, just whether, and that's his question, and that's why I want you to focus. Those are proceeds going to the Kims now. Now we're saying, what is it suggests, because the statute doesn't talk about anything about that. It just says they can't be assigned previously. So if we agree with you, can't be assigned previously, now they're going to go to the Kims. Why doesn't he have a lien on those proceeds? What is there in the statute or California gives him the right to go for it, so I guess I'm trying to figure out, does he have that lien, and can he glom onto those based on the lien? Not on the assignment, not on any contract he entered into, just the fact he did the work. So our position is that the tax liens prevail over any claim that he has, be it the charging lien, or be it the assignments that are invalid. The district court didn't find that, though, did it? The district court just ignored the Anti-Assignment Act. Right, so we're trying to figure, let's assume, we're making an assumption in your favor here. Let's assume that we agree with you that the Anti-Assignment Act applies here, that the district court erred by ignoring it. The district court also said he's got a lien against these proceeds, and I'm trying to figure out whether the district court was right on that, and if it was, whether we should just direct judgment in favor of the other side with respect to the proceeds, or send it back to the district court to litigate the lien issue, and you're saying, we're ahead of the lien. Well, nobody litigated that. We don't have a judgment from anybody about that. Right, so the district court did make an error in the decision about the lien priority, because what she said was, well, the government, what the district court's decision says is, the government has already conceded that as far as lien priority goes, that Mr. Honig's attorney's lien precedes it as far as priority, the government's tax liens. However, that was only as to the seized assets, not the claim that's paid to the government. So why doesn't your concession with respect to the seized assets apply equally well with respect to the proceeds of the attorney's fee application? Because of the anti-assignment purposes and the government's right to set off. Oh, but you never asserted a right to set off. We didn't assert the right to set off. This was a set off case, it would be easy. Well, if it was a set off case, it would be a different piece of litigation, because the judgment would have been entered, and then Mr. Honig would have expected to set, and Treasury Offset would have said, oh, wait, you're not getting $1.8 million, you're getting a dollar. Right, but you didn't do that. But we didn't do that, because this issue, from the moment that the government asserted its tax liens in this litigation, the issue of the ownership of the attorney's fees became an issue. I still don't understand your position, and I said it before, and tell me where I'm wrong. Because of the anti-assignment act, the entire agreement between Mr. Honig and his clients was invalid, and therefore, he was not entitled to assert a charging lien against the proceeds he produced by his efforts. Only with respect to the United States, not of the whole agreement, because we agreed for two of the seven complainants, the government does not have any tax liens. The government's already paid Mr. Honig those fees. Let's make this simpler. We're not saying it's invalid. We're saying as far as the purpose of the anti-assignment act is not to just say, oh, this assignment's invalid. It's to facilitate the collection of government debt. So the government has a debt against the Kim claimant. The government should not have to pay an attorney fee to the Kims, whether or not it ultimately belonged to Mr. Honig or not, because of his contract or because of his effort. The government should not have to pay. Excuse me, you're making a set-off argument. That argument I understand perfectly. If the government had said below, we have a claim against the Kims, and so even though we owe them a million dollars, they owe us $999,000, so we're just going to give them $1,000, we wouldn't be here. What the government said below is we're not making a set-off claim. What we're making a claim is that because of the anti-assignment act, Mr. Honig's lien on the proceeds is invalid, and I'm trying to figure out why that's the case, because the anti-assignment act says nobody can come to the government and say, give me money. Right. Okay? So you owe the Kims $60,000, viewed as a big pile of money. You've handed that to the Kims and said, we've now discharged our obligation to you, Kims. And Mr. Honig then came and said, but Kims, I have a claim to that pile of money. That's what I'm struggling with here. And I understand that struggle. And this is a procedurally difficult case. So what the government here did not just wait until the end of the case to effect a set-off. Though it's an administrative right the government would have had after the payment of the judgment. But you never have. But here, because we have already paid the money into the court, there's no way you can, I mean, of course it makes sense for us to say we weren't asserting set-off, because the government had already paid $1.2 million into the court. But you could have refrained from doing that, couldn't you? But when we did that, we reserved all rights in our claims. At that point, this litigation was at the forefront of a lot of issues on CAFRA, as you mentioned in the earlier argument. And at that time, it was unclear whether the attorney's fees were payable to the client or to Mr. Honig. So it may have been, if this court had decided 186 differently, this issue wouldn't even be litigated. But let's say I agree with you. I agree the attorney's fees are not payable to Mr. Honig because of the Anti-Assignment Act. But you paid them into court. And Mr. Honig says, this is not his only argument, his argument is the Act applies, doesn't apply, but Mr. Honig says, well, there's that pot of money in the court that you paid in. And it was because of my efforts that it was produced. And under California law, that gives me first claim to pay my fees for producing it. What's your answer to that question? That our tax liens trump. But should we send it back to district court to let the district court decide that? To send it back to the district court. Because as soon as... Tell me why... The tax lien's attached immediately. Well, but doesn't his lien attach when he enters into the agreement with his client? In other words, if we're thinking about priority of liens, if there isn't an attorney's lien, it attaches when he enters into the agreement with the client to undertake the work. The agreement isn't valid as against the United States. It's facilitating the government to not have to pay... But isn't that... Because you're thinking of this as a payment that ultimately goes to Mr. Honig. But the government is perceiving this from the perspective of who we are actually paying is the Kim claimants who owe us $25.3 million in taxes. But just a minute, given that the district court didn't determine that, you can make your best argument to the district court about having the tax liens being superior of the attorney lien, but let the district court make the first determination. Why should we make it here? If you would like to remand it for that purpose, you can. I mean, it seems to me that you didn't ever make that there. He didn't ever make an argument like that there. The district court didn't ever make a decision about that. Why not let him go back and you can cite why you have a priority. He will. You put your law together, and you can make all that, and then it can come back up to us to see if he did it right. If you'd like to see this appeal again, Your Honor, I'm sure... Well, I'm not sure. There's another way we could rule in his favor, and we won't see the appeal again. So that's why... Or you could rule in the government's favor. That's right. Because of the purposes of the Anti-Assignment Act and the purpose of... But we're talking past each other. I'm still trying to understand your argument. Your argument is that the attorney's fee agreement that Mr. Honig entered into with his clients is void ab initio against the government. I understand that. But it's not void ab initio as against the Kims, is it? No, absolutely not. Okay, and as against the Kims, he has a claim, he has a lien against the fruits of his labor, correct? Correct. And one of the fruits of his labor is the attorney's fee award. Absent his labor, that attorney's fee award would not have been produced. We're with each other so far. Absolutely. Okay, so the fact that the agreement is void ab initio is against you, I'm not sure that means that he doesn't have a claim against the proceeds. Tell me why he doesn't have a claim against the proceeds wholly apart from the agreement. He could have a claim against the proceeds, but the government's tax liens trump that because as soon as the property comes into existence, tax liens attach. Right, but doesn't the attorney's fee lien... Isn't it prior in time? Yeah, so he can't rely on the 2006 agreement when it's void as against the government. That's what our position is. What he's relying on is an agreement that's, you say, the March 2006 agreement. You keep taking me back to that agreement. I'm taking you back to the common law lien, which is statutory in California. As Judge Smith said, that's not what was briefed in the district court at all. Okay, fair enough. Let me ask you another question, which is important to me. You say the assignments do not comply with the statute, and it seems to me reading the statute and reading the assignments, they do not comply. Are there any assignments that comply with this statute? So, Your Honor, you're getting to the interesting academic question. Well, I think it's a pretty, well, very interesting subject because I don't think there are any assignments that comply with the statute. So what you're really telling me is because the case law suggests the government can waive the statute and the case law says otherwise and reality says the assignments never comply, what we're really saying is unless the government waives, you can never do it. That wasn't what the statute was supposed to do, was it? No. So what we're really saying is the big bad government determines when it is that this assignment can happen and when it can't, and you can't do anything about it. Is that something we ought to do? Determine that? I'd even say with Judge Reinhart on the panel? No. Is that the kind of stuff we ought to be doing? Let me take a couple steps back, and then I'll talk. No, I'm just kidding. So the Anti-Assignment Act, as we state in our brief, this dates to the founding era. It is solid law. If Congress wants to change it, it could. The government explained in this case none of the requirements are complied with. Frankly, I don't think there's ever a time now when they can be complied with, and I think you admit it in your brief, so let's go on. All right, so what we say is, well, if someone wanted to make that argument, you know, Mr. Honig, he could say, well, vouchers equal warrants. This is what should be substituted. But what the government says is, no, what Hager v. Swain said back in the 1800s is, if it's not paid by a warrant, then no, you just can't assign it. That's what the Supreme Court said. So, yes, if you want to characterize the position as being the big bad government. I don't. I don't, but I'm just trying to make it as best I can for the opposition here, which says, in this instance, if I hold this, what I'm really saying is, if the government says you can't do it, you can't. If the government says you can, you can. And there's not one way you can get around it. You can't get around it. That's true. But you also can't get around the government's right to set off unless they waive it. And what you're basically saying is that's okay. The government has the right not to have assignments made. And if the statute makes it impossible, it makes it impossible. Right. And if it makes it impossible, it makes it impossible. And the unanimous Supreme Court decision in Astry v. Ratliff, the dissent in 186, this is exactly what they were concerned about. And Justice Sotomayor and Judge Berzon can explain beautifully what those concerns are. I don't need to present them to this Court, and I'm sure my opposition will be able to. But they're statutory concerns. But those are statutory concerns. And the answer in this case is the same as it was in those cases. If Congress wants to change the statute so that CAFRA attorneys' fees are paid directly to the clients or Social Security fees or Veterans Benefits fees are paid directly under EJ or under CAFRA, Congress needs to change it. If no one can comply with the Anti-Assignment Act, Congress can change it. But it's not for this Court to do. I understood your argument. Thank you. I'll reserve the little time I have. One question. Yes, sir. What do you say about the $186,000 case after it came back? So after it came back, the government did not have a debt that it was asserting against the claimant there, and Mr. Gabbard was paid under his contract, which is akin to what happened here with the other two Kim claimants against whom the government does not have tax liens, which we've already paid on, and we don't dispute that. You don't dispute that without government tax liens, you can assign the proceeds of the attorney's fee agreement directly to the attorney? We don't dispute that this agreement is valid for every purpose as except against the government. Well, you disputed even in that $186,000 case. You disputed that they got it because of an assignment. You just said it doesn't matter, we have no claim to it. Right. You waived it. Right? Yes. Yeah. It isn't that you changed your argument. You just waived there, and since you're the ultimate on this, you can waive when you want to. Right. Do you have any further questions for me? I'm way into my rebuttal time. I would be happy to answer them. All right. Thank you. Thank you very much. Good morning, Your Honor. This is Eric Koenig for the Kim claimants. I think Judge Horowitz raised a very good point in that there is a charging lien. But the district court didn't rule on that lien, did it? Actually, the district court did find that the attorney fee agreements in this case had priority, first in time, over the government's tax lien. Right. But wasn't that with respect to – I mean, I'd like to think the district court did this, but I'm not sure it did. The district court said you had first priority with respect to the property over the government's tax lien. That's correct. But it was the same agreement, and it's the same timing. The agreements were made – all made at the same time, all prior to any of the tax liens being recorded or filed. And, frankly, as Ms. Briggs suggested, we don't really need to go back to the district court because it is the same time. It's the same agreement, the same finding. The court could easily just find, well, it applies equally to the proceeds as – I'm sorry, to the fee awards as it does the proceeds because it's all the same. It's the same decision. It's in the record. Her argument, as I try to construct it – and I think it's her argument, so she'll tell me if I'm wrong when she gets back up – is that the difficulty is that your charging lien has to be based on a fee agreement under California law. Correct. And your fee agreement, she says, is invalid because it purported to assign rights of the government – rights against the government to you. How do you answer that question? Well, she actually – the government's briefs specifically and the government's pleadings specifically say that these fee agreements were valid under California law. So they're valid under California law. She's saying we can't just – we can't assign against the government after the fact, but they're valid under California law, which means I think this court could just easily order that because of these charging liens and because the government's admitted that these charging liens are valid, the court can just say, okay, if these proceeds are being paid into the court or they should be paid into the court, then my, Mr. Honig's, lien should be paid first because the court's already found below that the fee agreements were first in time. But we would be reaching that in the first instance because the court below only found the lien enforceable as against the property. Right. Because it used the anti-assignment clause to not reach the question of – Correct. Well, that was the government's argument. But it is the same agreement. There's no – frankly, it would just be sending the court back down to – the case back down to the court for the court to look at its previous finding that my fee agreements were all first in time before all the taxes. Well, if you're going to win, it's always safer to send you back to the district judge to win, isn't it? Well, the district judge is now in the Court of Appeals in California. I know. So we're starting over with a new assignment. I just always ask that when a party says, I'm clearly going to win, so why send me back? And I say, well, why not send you back? That is my argument, but with a different judge this time. So, yeah, I think that's a very good point. I think that was my first argument in my brief, essentially, not as eloquently as you asked the question, but that my first point was that these vested in my interest immediately upon signing of the agreements. Well, let's get to the Anti-Assignment Act. The district court relied entirely on it. I don't see how you satisfy it. Do you? I don't see how we could possibly satisfy it, as Judge Smith quoted. So what? It's the government's money. Aren't they entitled to say the only way you can get it is by standing on your head for four hours? And if you can't stand on your head for four hours, then you can't get it. Well, yeah, unfortunately it puts all the power in the hands of the government to decide whether or not to accept an assignment. In this case, well, there's two other points I want to make. First of all, the Fifth, Sixth, and Eighth Circuits have all found that the Anti-Assignment Act does not apply to civil forfeiture cases, be it in those cases it had to do with the assignment of the proceeds, the race that was involved there. But the Attorney Fee Award is part of the defense of civil forfeiture cases. So it's not a new and separate claim being filed against the government. If a property owner successfully defends against the government's forfeiture case and gets their money back, CAFRA is designed, whatever the purpose of CAFRA is, but the way the result of CAFRA is to make the property owner whole by allowing them to file for an Attorney Fee Award and get reimbursed for its efforts. The other point was... Could they have offset? I'm sorry? Could they have offset here? I have no idea why they didn't, but could they have offset? I have no idea why they didn't either. They chose, I think because, I don't want to speculate, but it had to do... We owe you a million dollars, but you owe us two, so thanks for reducing the amount of our claim. That would have been okay. They could have tried that, yes. It would have resulted probably in another wrongful levy action being filed by me saying, this is not the Kim's property, it's my property. But on that one, that's where the Anti-Assignment Act comes in. A full circle to say that the Anti-Assignment Act does not apply to defense of civil forfeiture cases, period. Again, the cases were not concentrating on Attorney Fee Awards, but they were concentrating on the defense of a civil forfeiture case. And it doesn't make sense to me that we'd be able to collect a forfeiture, be able to collect a portion of the proceeds, which is taken out of the hands of the client. Isn't that different? In forfeiture actions, the government is saying, we own this property, we're entitled to forfeit it. Correct. And once they lose that claim, you're really not assigning anything as against them, because their underlying claim to here is a different claim. Well, once they lose the claim, they have no interest. Right. So that's different in the forfeiture context than it is in a tax lien context where they're saying. . . Right. I think it defeats the purpose of the whole statute, the whole attorney fee statute, because if you win, if the Fifth Circuit and the Sixth and the Eighth Circuits are correct in that, if you win, you can assign a portion of the property that comes back. The client is still losing money because they have to give up some of the property. They've won the case. But those cases, I guess what I'm saying is those cases don't involve the priority of other liens against the property. They simply say, you can . . . the Anti-Assignment Act doesn't prevent you from assigning this property, but if the government had a prior lien against it, it's still going to . . . you take it subject to that lien, right? Not necessarily, because it's a defense of a civil forfeiture case. It's all part and parcel . . . the attorney fee award is all part and parcel of the defense of a civil forfeiture case. CAFRA . . . I don't believe CAFRA was designed to allow someone to have to hire an attorney, win the case, but have to give up a portion of the property to an attorney when there's an attorney fee award possibly out there to pay the attorney. It doesn't make sense to have the person lose the . . . win the forfeiture case, but have to give up money to pay an attorney when there's an attorney fee statute there that is designed to pay for an attorney. So you don't agree with $186,416? I . . . no, I don't. I definitely don't agree with it. I have to live with it. Well, but the bottom line is, we're stuck with it. Yeah, yeah. I have to live with it. It seems to me that if we go with your argument, we've got to say that that case is wrong. No, not necessarily. Because they said the attorney's fees under CAFRA are payable to the claimant. They say they're payable to the client, but there's a footnote that says there are . . . there's the possibility that there can be an assignment of an attorney fee award. Well, it does, but . . . So they recognize . . . Assignments out there, wherever they are, are one thing. Assignment against the government is now back to this statute, right? It's back to the statute that is impossible to comply with, yes. I understand that. But I think you have to look at the circuit decisions, the 5th, 6th, and 8th Circuit decisions that say that there are clear . . . and the government has acknowledged those in its briefs, in the reply brief, that it does apply. Those weren't . . . they didn't go any further than that. And the government acknowledges that the Adding Assignment Act clearly does not apply to the defense of civil forfeiture cases. Now, they didn't get to the point of attorney fee awards, but again, then you have to look at CAFRA and think, well, what . . . why would CAFRA exist to allow the claimant to be able to become whole after a forfeiture case by having his attorney paid when the money can be taken from the attorney? We could at least as easily, if we're taking that approach, say, well, okay, I can understand that, but then I look at the EAJ, and no question it applies there. No question, and CAFRA is very different. I understand the argument that it's different, but the fees that are allowed there are allowed under much the same methods. I mean, the Lodestar method, yeah. I mean, they're paid that way, as we saw in the original cases. By the way, I wanted to bring up something I heard . . . Let me go back to the Sixth Circuit case, because this troubles . . . The Sixth Circuit case says that somebody who shows up and asserts a claim against the property is not asserting a claim against the government, right? Yeah. It's not talking about the attorney or the claimant itself, but rather a third party that says, this is my property, as we were hearing in the case before. Right. And that's not . . . it's saying that doesn't really involve the Anti-Assignment Act. You're not really making a claim of assignment. Right. You're trying to get your property back. Okay. I just want to make sure we're talking about the same case. Yeah, the government's already seized your property. You want to get it back. You have no choice. If you don't enter the lawsuit, defend the lawsuit, your property is gone. Right, and what the court says is CAFRA wasn't meant to stop you from asserting your claim of ownership of the property, even if your claim of ownership arose by assignment from the debtor, right? Right. Well, those courts didn't involve CAFRA. Right. They involved . . . because CAFRA didn't exist. They were seizures, but they were seizures. They were seizures, and they . . . I mean, if they . . . it would have been EJIA that would have applied . . . Yeah, I'm sorry. I just wanted to make sure we were thinking about the same cases. Yeah, but it's all one case. It's not a new and separate claim that is filed by a party after they win the forfeiture case. It's just the attorney fee statute that is triggered after they win the forfeiture case. But they're not actually going out and filing a claim against the government. They're just trying to get their fees paid because they won the case. Yeah, but in this case . . . so let's go back to your agreement with your clients. Your agreement with your clients says in this case, you assign to me any attorney's fee award. I think I . . . Or something like that. I think it actually said I had a charging lien, and . . . But doesn't it also say you assign to me any . . . I said the fees belong to me. Right. Right. Which is the same thing. Okay, so vis-a-vis the government, let's assume you got a judgment and the government didn't pay. Could you go to the government and say pay up? If I got a judgment . . . Right, the same judgment you got in this case. It's a fee award to the Kims of some numbers, $100,000, and the government is intransigent. It says we're not paying. Could you go to the government and say I have a judgment here? Well, no, because the judgment is payable . . . To the Kims. . . . in favor of the claimants who are only . . . Right. I'm not authorized to file for a fee award. No, I understand. All right. You've won the award. Right. You've won the award. But I am the beneficiary or the presumed beneficiary of the award. Right, and that's why I'm still asking the same question. That's a good question. I think the answer is no.  Yeah, I don't think I can sue the government directly for my fees. Okay. However, if the tax levy that they made or tax levy that the government filed is wrong . . . I mean, we're all presuming the government is correct and these are taxes that are actually old. If you rule in favor of the government in this case, I can file a wrongful levy suit against the government saying . . . Well, your tax determination was wrong. It's not . . . The taxes . . . There shouldn't have been any taxes paid in this case or charged in this case. So, it's still my money. No, I guess my point was . . . That's not what I have to do. The Anti-Assignment Act does prevent you from taking a claim from your clients and say, it's now my claim. Right. Government, you pay it. Right? Right. Okay. So, to the extent your agreement gave you that right, it was invalid as against the Anti-Assignment Act, was it not? It may have given you a separate right to charge against the proceeds, but that's a separate question. If you look solely at the Anti-Assignment Act language, yes. However, I think you have to take the Fifth, Sixth, and Eighth Circuit decisions into account saying it does not apply to the defense of civil forfeiture cases. So, on its face, yes, but you have to look at the case law. The case law from three circuits . . . Well, but the case . . . That's why I asked the question before. The case law from three circuits doesn't deal with an attorney making a claim against proceeds, does it? Yes. Which one? Well, all three apply . . . The Anti-Assignment Act was asserted by the government because the . . . A claimant came in . . . A claimant came in . . . And said, it's my property, not yours, government. Right. But they assigned their fees to the . . . They assigned a portion of the recovery to their attorneys. And the attorneys . . . it was determined that that portion that was assigned to the attorneys is payable to the attorneys or the attorneys could get it. The government can't take it. I believe I'm correct on this. Yeah, and we'll both have to go back and . . . I apologize if I'm wrong. Yeah. But the bottom line is it's not a new claim. An attorney fee award is not a new claim against the United States government in these cases when they assert the Anti-Assignment Act. And that's what the Anti-Assignment Act is designed to do is to stop someone, a party, to protect the government against people assigning claims against the government. These weren't claims . . . they were never claims against the government. They were claims against their own property that was seized by the government. And so the Anti-Assignment Act wasn't designed for that type of situation where someone's getting their property. And that's what these circuits said, getting their property back. And then making themselves whole by getting the attorney's fees paid by the government when the government's wrong. And the government was wrong in this case. They lost the case. And frankly, I was asked in a previous argument a couple of points I wanted to make. One is there was a question about how are most of these cases taken on contingency. In fact, years ago I took cases on contingency, forfeiture cases. But now, in light of this case and low-value cases, I can't afford to take cases on contingency. I have to take it on an hourly fee. And I take all my cases either on a flat fee or hourly. And what it does, though, is it hurts the low-value cases like Mr. Barnett's and the Moser case earlier. And I have a case, U.S. v. 17,700. Don't argue the other cases for us because the government doesn't have a chance to respond to them. I think that's unfair. No, but I want to argue, and it's similar. I had a case like that where it was less than $18,000 that was seized. Now, I could not take that case today if the court rules in favor of it. Yeah, but I really don't. It seems to me it's unfair for you to argue a case that's already been argued when the government doesn't have a chance to respond to it. No, no, no, I'm talking about my own cases. No, but this is not relevant to this case. No, no, no, but it's relevant to the abacus brief and my public policy argument. Well, let me ask you a question that does relate to this case because now I've remembered why the Fifth. The Fifth Circuit says the Anti-Assignment Act doesn't apply to NREM claims, right? Right. Okay, that's what. And, therefore, your claim to the property, to the real property. Now, is this an NREM claim that you have against the proceeds? The case, the forfeiture case is an NREM case. Right. Period. This is part of that NREM case. Is your claim against the proceeds an NREM claim under the California law? No, because I don't have a new claim. It's part of the NREM case. It's just the attorney fee award as a result of the NREM case. So it's not a new claim, and that's a very good question. This is not a new claim against the U.S. government. This is just part of the defense of an NREM forfeiture action, and the attorney fee award is just part of it. It isn't getting back any property. All it is is getting attorney's fees, sums of money in excess of the property that they get back. It's being made whole as a result of prevailing. I understand that argument. Yes. But in the face of it, and that's why I'm a little worried about your work in the other circuits, in those cases we were really only talking about the actual things the government took. And then thereafter, if some of them had been assigned to someone else, in this particular case the government is saying you don't get to assign it first, and you don't get to do any assignment when we say you can't. That's what they're saying, yes. I just want to make sure because I think there's a difference there. There is a difference if you think of a client. I'm not the one who filed for the attorney fee award in this case. It was the client. Was that an NREM claim? It was. What the Fifth Circuit says and the other circuits say is that with respect to the forfeited property, the Anti-Assignment Act doesn't apply because it doesn't apply to NREM claims. So now I'm talking about, and the government says, by the way, you win on that. We have priorities against the forfeited property or attempted to be forfeited property. Now we're talking about a separate pile of money, the attorney's fee award. And the question I'm asking, and I don't know the answer, is that an NREM action? It doesn't seem to me to be an NREM action. Part of the NREM action. It's the tail end of it. And if you look at any of the case law about attorney fee awards, you can get attorney's fees for arguing for your attorney fee award because it's all part of that one action. This is not a whole new action filed by the property owner against the government. It's just part of the initial action because they're just finishing up, essentially, what they're entitled to for prevailing in that case. I just went over. I just finished. Thank you. Any other questions? Thank you. Thank you, Your Honors. I'll give you a minute or two. Thank you, Your Honors. Just to clarify, the government does take the position that the Anti-Assignment Act here did not invalidate the assignment. So if Mr. Honig's clients had prevailed instead of optional in the previous case, after nine years of litigation, if they hadn't settled the second day of trial and they had ultimately taken away the seized assets, Mr. Honig would have been paid before the government. It's only as to this specific fee award. The other point that I was just under... Yeah, but you admitted his claim was superior to yours. It might not have been superior to optional capitals. That's all you're saying. Right. Absolutely. But as far as the policy argument he was trying to make, if it were a claimant who prevailed completely in a CAFRA action, meaning they obtained the assets, even if the government effected a set-off or used the Anti-Assignment Act on the attorney's fees, the government would, here, the government would, Mr. Honig would have been paid out of the seized assets. We all understand the practical difficulties. He can't make a claim against the property because somebody else owns it. Right. But as far as these parade of horribles, if, in fact, they're victorious against the big, bad government, then in the end they should, in most cases, have the property and not have the victim here, optional, who obtained it. And then you asked the question again to Mr. Honig, why would the government here set off by depositing the money into the court? And that was because here this was litigation that had gone on for decades. Well, I don't question your motives, but you did waive set-off, didn't you? Right, because we deposited the money. We can't set it off now. We can only set off through the Treasury Offset Program, which is explained through how it works in the Astry v. Ratliff, because what happened there is the attorney had a result for his client, was expecting a payment, and then, oh, no, my client had this debt. And so the reason that courts want to do it in the open is for judicial efficiency. If you look at page 20 of our reply brief, there are a lot of courts that regularly now in Social Security cases after Astry talk about the Anti-Assignment Act and deal with it all in one proceeding to protect attorneys so that later on they're not caught unaware just by the government's big, bad government's right to affect the set-off later on. Well, but it's the two of them that combine. In other words, we all agree with you that the anti—I think I agree with you. I don't know. I have no idea what my colleagues think. I think I agree with you that the Anti-Assignment Act bars the assignment. That's not the question that I'm really focusing on, which is that once the assignment is barred and the money only belongs to the Kims, why doesn't he have first priority against it? And I'm sorry, I cut off Judge Reinhart. I didn't mean to. No, no, I just wanted to see if he's stipulating the government as a big, bad government so we don't have to hear it each time. It could be a big, good government, too. I think that we're the big, good government here, and we're collecting taxes for the benefit of all of the taxpayers, protecting taxpayers who are paying their taxes, and not those who have large accessions to wealth that they do not pay taxes on. Can you help me with a question that I asked opposing counsel? The cases from the other circuits say the Anti-Assignment Act doesn't apply to NREM claims, and that's why you stipulated that he had priority over you with respect to the property. Does that principle apply to attorney's fee awards or not? No, I don't think so. Why not? Because here, the Kims' claim for attorney's fees at least has its genesis at some point. I mean, there are lots of different ways you can look at it. It's a contract claim, not an NREM claim. At least if you look at the 2006 agreement that Mr. Honig executed with the Kim claimants, it contemplates a claim against the government for fee awards, which is a separate claim against the government. It's not part of the NREM proceeding deciding, as this court cited to you, all the ancient precedent in the first decision in this case when it told the district court that it had to decide the NREM proceeding. It's not deciding whose property is this, the seized assets. After the government lost, this court said, well, the government couldn't put forth the evidence to prove that it was the fruits of fraud. So it's not the government can't take it under the forfeiture law, but whose is it? So then it was litigated between optional, the Kims and DAS, as an NREM proceeding, which is exactly that. We're focusing on the Kims claim against the government, which is what we're focusing on here. Is that an NREM claim or is it a statutory? It's a statutory claim for attorney's fees under CAFRA. It's not a common law claim. It's a claim under a statute. Because if the statute didn't exist, there'd be nothing to fight about. If CAFRA didn't exist, there would be nothing. That's why it's not this common law. There's no way it can be because it only exists under the statute, which is a waiver of sovereign immunity to award that Congress decided that fees should be awarded. They also, through the language that they use, it's been determined they're awarded to the claimants and not their attorneys, preserving all the government's rights. If you have no further questions, I'm way over my time. Thank you. Thank you. Thank you, Your Honors. Case to surrogate will be submitted.
judges: Reinhardt, Smith, Hurwitz